STATE OF NORTH CAROLINA v. JAMES EDWARD THOMAS

No. 91A95

(Filed 8 November 1996)

## 1. Jury § 266 (NCI4th)— capital resentencing—swearing of jury

There was no plain error in a capital resentencing where defendant alleged that the case was not tried before a jury duly sworn in open court in the presence of defendant and his counsel. Defendant admits that he was present for the selection and impaneling of the jury and does not contend that he was not physically present when the jurors were given their oath of office. To the extent that the record shows anything, it shows that the jurors were duly sworn and defendant presents no evidence to the contrary.

**Am Jur 2d, Jury §§ 217 et seq.**

## 2. Evidence and Witnesses § 1693 (NCI4th)— capital resentencing—photographs of victim—admissible

The trial court did not err in a capital resentencing proceeding by admitting into evidence seven photographs where defendant argued that the photographs were introduced to prove that the killing was done in an especially heinous, atrocious, or cruel manner, an aggravating circumstance which the first jury had rejected. The photographs were neither cumulative nor excessive in number and their probative value was not substantially outweighed by the danger of unfair prejudice. Although some of the photographs were gruesome, they were relevant to illustrate the circumstances of the killing and tended to establish that the murder was committed during the commission of a sexual offense, which supported the N.C.G.S. § 15A-2000(e)(5) circumstance.

**Am Jur 2d, Homicide §§ 417 et seq.**

**Admissibility in evidence of enlarged photographs or photostatic copies. 72 ALR2d 308.**

**Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.**

**3. Criminal Law § 1343 (NCI4th)— capital resentencing— especially heinous, atrocious, or cruel circumstance— rejected at first hearing—references by prosecutor**

There was no plain error in a capital resentencing where the previous jury had rejected the especially heinous, atrocious, or cruel aggravating circumstance, the trial court in this proceeding had granted defendant's motion that this circumstance not be allowed, and defendant argued that the prosecutor impermissibly called attention to the especially heinous, atrocious, or cruel aggravating circumstance by repeatedly referring to sexual "sadism" and "torture" during cross-examination of two defense witnesses and by repeatedly characterizing the case as "unique" during jury *voir dire*. A jury in a capital sentencing proceeding may consider all the circumstances surrounding the killing; the prosecutor did not mention the especially heinous, atrocious, or cruel language during the presentation of the evidence or the cross-examination of the defense witnesses. The prosecutor's repeated use of the word "unique" during jury *voir dire* was not so grossly improper as to require the court to intervene *ex mero motu*.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**4. Criminal Law § 452 (NCI4th)— capital resentencing— especially heinous, atrocious or cruel aggravating circumstance not allowed—prosecutor's argument—references to torture and sadism**

A prosecutor's argument in a capital resentencing hearing was not so grossly improper as to require the trial court to intervene *ex mero motu*, and did not lead the jury to return a sentence of death based on passion, prejudice, or other arbitrary factors, where the previous jury had rejected the especially heinous, atrocious, or cruel aggravating circumstance and the court in this proceeding had granted defendant's motion that this circumstance not be allowed, but defendant alleges that the prosecutor described defendant's offenses in ways that suggested the murder was especially heinous, atrocious, or cruel. Although the prosecutor's argument included repeated references to torture and sadism, neither the prosecutor nor the judge used the especially heinous, atrocious, or cruel language and the jury was not confused as to what aggravating circumstances it could consider.

**Am Jur 2d, Trial §§ 648 et seq.**

Supreme Court's views as to what courtroom state-
ments made by prosecuting attorney during criminal trial
violate due process or constitute denial of fair trial. 40
L. Ed. 2d 886.

**5. Criminal Law § 1303 (NCI4th)— capital resentencing—jury
selection—prosecutor's statements**

There was no error in a capital resentencing so grossly
improper as to require the trial court to intervene *ex mero motu*
where defendant contended that the prosecutor engaged in a
series of lectures by which he attempted to establish rapport with
the jurors and that, while technically accurate, the prosecutor's
statements were unduly prejudicial because the statements led
the jurors to expect a large number of mitigating circumstances
and to believe that mitigating circumstances have less value than
aggravating circumstances. The trial court had no opportunity to
correct any perceived errors in the statements, the trial court
properly instructed the jury regarding the aggravating and miti-
gating circumstances, and the law to be applied was as stated by
the court rather than by the attorneys. The jury was not misled
and its recommendation was not unduly influenced by the prose-
cutor's statements during *voir dire*.

Am Jur 2d, Criminal Law § 600.

**6. Criminal Law § 352 (NCI4th)— capital resentencing—
defendant seen in leg irons—no plain error** ·

There was no plain error in a capital resentencing where the
trial court did not err by not conducting an inquiry and not declar-
ing a mistrial *ex mero motu* when a panel of prospective jurors
was allowed to see defendant in leg irons. Defendant was not
shackled or bound while in the courtroom, but may have been
seen in restraints by prospective jurors as he was brought
through the lobby of the courthouse. The jury was aware that this
was a sentencing proceeding and that defendant's guilt had been
determined, as he had been previously convicted of first-degree
murder, and being temporarily observed in restraints did not
infringe on defendant's presumption of innocence, since there
was no such presumption.

Am Jur 2d, Criminal Law §§ 844-846.

Propriety and prejudicial effect of gagging, shackling,
or otherwise physically restraining accused during course
of state criminal trial. 90 ALR3d 17.

STATE v. THOMAS

[344 N.C. 639 (1996)]

7. **Jury § 141 (NCI4th)— capital resentencing—jury selection—parole eligibility—questions not allowed**

The trial court did not err in a capital resentencing by denying defendant's motion to question potential jurors concerning parole eligibility.

**Am Jur 2d, Jury §§ 205, 206.**

**Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case. 99 ALR2d 7.**

8. **Criminal Law § 1322 (NCI4th)— capital resentencing—parole eligibility—jury question—instruction**

The trial court did not err in a capital resentencing by informing the jury, in response to specific questions from the jury, that eligibility for parole is not a proper matter for the jury to consider and that it should determine the question of death as though life imprisonment means exactly what the statute says.

**Am Jur 2d, Trial §§ 286, 1443.**

**Procedure to be followed where jury requests information as to possibility of pardon or parole from sentence imposed. 35 ALR2d 769.**

9. **Criminal Law § 1312 (NCI4th)— capital resentencing—aggravating circumstance—previous conviction involving violence—1976 California plea**

There was no prejudicial error in a capital resentencing where the State introduced in support of the aggravating circumstance of a previous conviction involving violence a copy of a 1976 California change of plea and order indicating that defendant had pleaded guilty to one count of armed robbery with a .22 caliber pistol, that defendant had pleaded guilty to a second count of felony robbery, and that two additional armed robbery charges had been dropped. Assuming that the exhibit would not have been admissible over a proper objection, its admission did not impact the jury's recommendation in light of the evidence that was properly admitted and the fact that the jury was properly instructed. Additionally, defense counsel admitted the existence of this aggravating circumstance in his argument to the jury.

**Am Jur 2d, Criminal Law § 328.**

STATE v. THOMAS

[344 N.C. 639 (1996)]

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

10. **Criminal Law § 1373 (NCI4th)— death penalty—not disproportionate**

A sentence of death was proportionate where the record fully supported the two aggravating circumstances found by the jury, and there is no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. The victim was found dead in her home, with bite marks on her breasts, her inner thighs bruised, her head covered by a pillow, and a telephone inserted inside her vagina; there were signs of both manual and ligature strangulation which was determined to be the cause of death; and defendant had been convicted previously of armed robbery, a violent felony. This case has the characteristics of first-degree murders for which the death penalty has been upheld.

**Am Jur 2d, Criminal Law § 628.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Thompson, J., at the 13 February 1995 Criminal Session of Superior Court, Wake County. Heard in the Supreme Court 12 September 1996.

*Michael F. Easley, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, for the State.*

*Elizabeth G. McCrodden for defendant-appellant.*

**STATE v. THOMAS**

[344 N.C. 639 (1996)]

FRYE, Justice.

On 23 June 1986, defendant James Edward Thomas was indicted for murder and first-degree sexual offense. At the 6 July 1987 Criminal Session of Superior Court, Wake County, he was tried capitally to a jury, found guilty, and sentenced to death for the first-degree murder conviction and to a consecutive term of life imprisonment for the sexual offense conviction. On appeal, this Court ordered a new capital sentencing proceeding on the first-degree murder conviction based on the United States Supreme Court's decision in *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). *State v. Thomas*, 329 N.C. 423, 407 S.E.2d 141 (1991). Defendant's new capital sentencing proceeding was held 13 through 24 February 1995, Judge Jack Thompson presiding.

At defendant's new capital sentencing proceeding conducted pursuant to N.C.G.S. § 15A-2000, the jury recommended a sentence of death for the first-degree murder conviction. The jury found as aggravating circumstances that defendant had been previously convicted of a violent felony, N.C.G.S. § 15A-2000(e)(3) (1988) (amended 1994); and that the murder had been committed while defendant was engaged in a sexual offense, N.C.G.S. § 15A-2000(e)(5). The jury also found twenty-six of the twenty-nine statutory and nonstatutory mitigating circumstances submitted to it. On 24 February 1995, Judge Thompson, upon the jury's recommendation, imposed a sentence of death.

Defendant appeals to this Court as of right from the sentence of death. On this appeal, defendant makes eleven arguments, supported by fourteen assignments of error. We reject each of these arguments and conclude that defendant's capital sentencing proceeding was free of prejudicial error and that the death sentence is not disproportionate. Accordingly, we uphold defendant's sentence of death.

The evidence supporting defendant's conviction is summarized in this Court's prior opinion, *State v. Thomas*, 329 N.C. 423, 407 S.E.2d 141, in which we vacated defendant's death sentence for *McKoy* error and remanded the murder case for a new capital sentencing proceeding. That evidence will not be repeated here, except where necessary to discuss the issues before us.

[1] In his first argument, defendant contends that the trial court committed plain error at his capital resentencing proceeding by allowing the case to be tried before a jury that had not been duly sworn in open

court in the presence of defendant and his counsel. We reject defendant's argument since there is no evidence that the case was tried before a jury that had not been duly sworn.

Under our Constitution, the accused in a criminal trial is entitled to trial by an impartial jury. N.C. Const. art. I, § 24. Our legislature has provided statutory procedures for selection, excusal, and swearing of jurors. *See, e.g.*, N.C.G.S. §§ 9-6 (Supp. 1995), 9-14, 9-15 (1986). These statutes contemplate a procedure whereby each juror is sworn to "truthfully and without prejudice or partiality try all issues in criminal or civil actions that come before him and render true verdicts according to the evidence." N.C.G.S. § 9-14. However, once all jurors, including alternate jurors, have been selected to try a particular criminal case, they are impaneled by the clerk as follows:

"Members of the jury, you have been sworn and are now impaneled to try the issue in the case of State of North Carolina versus ............ You will sit together, hear the evidence, and render your verdict accordingly."

N.C.G.S. § 15A-1216 (1988).

Our Constitution also provides that a defendant has the right to be present at every stage of the trial. *State v. Smith*, 326 N.C. 792, 794, 392 S.E.2d 362, 363 (1990). This right cannot be waived in capital trials. *State v. Moore*, 275 N.C. 198, 208, 166 S.E.2d 652, 659 (1969). We have declined to extend the nonwaivable right to be present in capital trials to pretrial jury selection matters. *State v. McCarver*, 341 N.C. 364, 381, 462 S.E.2d 25, 34 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 482 (1996); s*ee also State v. Workman*, 344 N.C. 482, 476 S.E.2d 301 (1996).

Defendant admits that he was present for the selection and impaneling of the jury selected for his capital sentencing proceeding. He does not even contend that he was not physically present when the jurors were given their oath of office. He contends, rather, that the record does not affirmatively show whether the jurors were sworn and, if sworn, the form of the oath taken by them and whether the oath was taken in his presence in open court. Admitting that no objection was made at trial, and that no question was raised as to whether the jurors were sworn or the circumstances surrounding any oaths taken by the jurors, defendant nevertheless contends that this Court should find plain error because he was not tried by a jury that had been duly sworn.

STATE v. THOMAS

[344 N.C. 639 (1996)]

In *Baldwin v. Kansas*, 129 U.S. 52, 32 L. Ed. 640 (1889), the United States Supreme Court held that a journal entry to the effect that the oath has been given is sufficient to overcome the contention that a jury was not adequately sworn. In *State v. Fennell*, 307 N.C. 258, 262, 297 S.E.2d 393, 396 (1982), this Court noted the presumption of regularity in a trial, stating that "where the record is silent on a particular point, it will be presumed that the trial court acted correctly." *See also State v. Bennett*, 308 N.C. 530, 534, 302 S.E.2d 786, 789 (1983); *State v. Sanders*, 280 N.C. 67, 72-73, 185 S.E.2d 137, 140 (1971). In the instant case, however, the record is not silent. As defendant concedes, there are two notations in the record to the effect that the jury had been duly sworn. The judge stated to the jury: "You have taken an oath as jurors that you will try all matters that come before you and render true verdicts according to the evidence." The record also includes a statement by the clerk: "Members of the jury, you have all been duly sworn." Thus, to the extent that the record in the instant case shows anything, it shows that the jurors were duly sworn. Defendant presents no evidence to the contrary. Accordingly, we reject defendant's argument that he was tried by a jury that had not been duly sworn.

[2] Defendant's second argument is based on two assignments of error. In one assignment of error, defendant contends that the trial court erred in denying his motion to exclude photographs of the victim on the grounds that the photographs were prejudicial and unnecessary. In the other assignment of error, defendant contends that the trial court erred in partially denying his motion regarding the especially heinous, atrocious, or cruel aggravating circumstance and then by allowing the State thereafter to conduct its *voir dire* of prospective jurors and to present evidence or question witnesses in ways suggesting that the crime was especially heinous, atrocious, or cruel.

Before trial, defendant filed several motions, including a "Motion to Exclude Photographs," which the trial court denied. Defendant also filed a "Motion to Prevent the State of North Carolina from Submitting N.C.G.S. § 15A-2000(e)(9), Which Was Previously Rejected by the Jury, as an Aggravating Factor and to Exclude Evidence Tending to Show that the Murder of Teresa Ann West was Heinous, Atrocious and Cruel." The trial court granted defendant's motion insofar as it requested that the aggravating circumstance that the murder was "especially heinous, atrocious, or cruel" not be allowed. The trial court denied the motion as it related to the State's presentation of evidence concerning the circumstances of the killing.

**STATE v. THOMAS**

[344 N.C. 639 (1996)]

Addressing the photographs first, defendant concedes that, pursuant to N.C.G.S. § 15A-2000(a)(3), the jury in a capital sentencing proceeding may consider all the circumstances surrounding the killing. However, defendant argues that the photographs of the victim were introduced to prove that the killing was done in an "especially heinous, atrocious, or cruel" manner, an impermissible circumstance in this case since defendant's first jury rejected this circumstance. We disagree with defendant's contention that the trial court erred in denying his motion to exclude the photographs.

In *State v. Rose*, 335 N.C. 301, 439 S.E.2d 518, *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 883 (1994), we said:

> This Court has stated that "[p]hotographs of homicide victims are admissible at trial even if they are 'gory, gruesome, horrible, or revolting, so long as they are used by a witness to illustrate his testimony and so long as an excessive number of photographs are not used solely to arouse the passions of the jury.'" *State v. Thompson*, 328 N.C. 477, 491, 402 S.E.2d 386, 394 (1991) (quoting *State v. Murphy*, 321 N.C. 738, 741, 365 S.E.2d 615, 617 (1988)). "Photographs may also be introduced in a murder trial to illustrate testimony regarding the manner of killing so as to prove circumstantially the elements of murder in the first degree." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988).

*Rose*, 335 N.C. at 319, 439 S.E.2d at 528.

Admissible evidence may be excluded, however, under Rule 403 of the North Carolina Rules of Evidence if the probative value of such evidence is substantially outweighed by its prejudicial effect. "Whether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in light of the illustrative value of each . . . lies within the discretion of the trial court." *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527.

In this case, seven photographs were introduced into evidence. Although some of the photographs were gruesome, they were relevant to illustrate the circumstances of the killing and tended to establish that the murder was committed during the commission of a sexual offense which supported the N.C.G.S. § 15A-2000(e)(5) aggravating circumstance. These photographs were neither cumulative nor excessive in number and their probative value was not substantially outweighed by the danger of unfair prejudice. Accordingly, the trial court did not err in admitting these photographs into evidence.

**[3]** In the other assignment of error supporting his second argument, defendant contends that the prosecutor impermissibly called attention to the especially heinous, atrocious, or cruel aggravating circumstance by repeatedly referring to sexual "sadism" and "torture" during cross-examination of two defense witnesses and by repeatedly characterizing the case as "unique" during jury *voir dire*. Defendant did not object at the time to the prosecutor's cross-examination or *voir dire*.

First, as to counsel's questions on cross-examination, we note that the jury in a capital sentencing proceeding may consider all the circumstances surrounding the killing. N.C.G.S. § 15A-2000(a)(3) (Supp. 1995). N.C.G.S. § 15A-2000(a)(3) provides:

> In the [capital sentencing] proceeding there shall not be any requirement to resubmit evidence presented during the guilt determination phase of the case, unless a new jury is impaneled, but all such evidence is competent for the jury's consideration in passing on punishment. Evidence may be presented as to any matter that the court deems relevant to sentence, and may include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (e) and (f). Any evidence which the court deems to have probative value may be received.

In the instant case, a new jury was impaneled for defendant's new capital sentencing proceeding and the prosecutor presented evidence to support the aggravating circumstances and cross-examined the witnesses for the defense as to the extent of their knowledge of the crime and the defendant. Since the trial court had ruled that it would not submit the N.C.G.S. § 15A-2000(e)(9) aggravating circumstance, the prosecutor did not mention the "especially heinous, atrocious, or cruel" language during the presentation of the evidence or the cross-examination of the defense witnesses. In light of the foregoing and the fact that the questions were relevant to the circumstances of the killing, including the violent sexual assault, we hold that the prosecutor did not impermissibly call attention to the especially heinous, atrocious, or cruel aggravating circumstance.

Second, in reviewing counsel's arguments, we have said:

> Control of counsel's argument is largely left to the trial court's discretion. *State v. Zuniga*, 320 N.C. 233, 357 S.E.2d 898, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987). When a defendant

does not object to an alleged improper jury argument, the trial judge is not required to intervene *ex mero motu* unless the argument is so grossly improper as to be a denial of due process. *State v. Brown*, 320 N.C. 179, 358 S.E.2d 1, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987).

*State v. Howell*, 335 N.C. 457, 471, 439 S.E.2d 116, 124 (1994). We conclude that the prosecutor's repeated use of the word "unique" during jury *voir dire* in this capital sentencing proceeding was not so grossly improper as to require the court to intervene *ex mero motu*. Accordingly, we reject defendant's second argument.

Defendant's third argument is in two parts. First, the essence of defendant's argument is that it was improper for the prosecutor to describe defendant's offenses in ways that suggested the murder was especially heinous, atrocious, or cruel, and that any argument suggesting such required the trial court to intervene *ex mero motu*. Second, defendant contends that the jury returned the death sentence under the influence of passion, prejudice, and other arbitrary factors because of the prosecutor's impermissible argument. We disagree with both contentions.

[4] We will first address defendant's contentions regarding the prosecutor's argument. Since defendant did not object at trial, we must determine whether the prosecutor's argument was so grossly improper as to require the trial court to intervene *ex mero motu*. *Howell*, 335 N.C. at 471, 439 S.E.2d at 124.

This Court rejected a similar argument in *State v. Bacon*, 337 N.C. 66, 446 S.E.2d 542 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 1083 (1995). In *Bacon*, the defendant contended that his due process rights were violated when the prosecutor repeatedly emphasized future dangerousness and brutality during his closing argument where the especially heinous, atrocious, or cruel aggravating circumstance could not be considered. This Court held that the defendant suffered no undue prejudice from the prosecutor's arguments because neither the trial court nor the district attorney ever mentioned the especially heinous, atrocious, or cruel aggravating circumstance and it was clear to the jury what aggravating circumstance could be considered. *Id.* at 93, 446 S.E.2d at 556.

In the instant case, the prosecutor's argument included repeated references to torture and sadism. Here, as in *Bacon*, neither the prosecutor nor the trial judge used the "especially heinous, atrocious,

or cruel" language, and we are satisfied that the jury was not confused as to what aggravating circumstances it could consider. The prosecutor's argument was not so grossly improper as to have required the trial court to intervene *ex mero motu. Id.* For similar reasons, we also reject defendant's contention that the prosecutor's argument led the jury to return a sentence of death based on passion, prejudice, or other arbitrary factors.

[5] In his fourth argument, defendant contends that the trial court committed prejudicial error in failing to intervene *ex mero motu* to prevent the prosecutor's *voir dire* of prospective jurors. Defendant contends that the prosecutor engaged in a series of lectures by which the prosecutor was attempting to establish rapport with the jurors. In addition, defendant contends that, while technically accurate, the prosecutor's statements during *voir dire* were unduly prejudicial because the statements led the jurors to expect a large number of mitigating circumstances and to believe that mitigating circumstances have less value than aggravating circumstances.

Defendant cites the following as an example of the prosecutor's improper statements:

> And those things go to the nature of the person, how they were brought up, how they were raised, you might hear some psychological reports, that sort of thing. And they are not limited [in] numbers, they are just—submit fifty mitigating factors and—and it should be that way. But you don't, on the other hand, you don't compare the numbers of factors. You don't add up one aggravating factor and three mitigating factors and say the mitigating factors win. You've got to use your common sense and put value on what they mean.

> For example, somebody could have a terrible childhood, one brother or one sister, and do bad and the other child could do wonderful; so, it might not mean anything in some circumstances.

We note first that defendant did not object to the prosecutor's statements. Thus, the trial court had no opportunity to correct any perceived errors in the statements. Assuming, *arguendo*, that the statements may have raised the jury's expectation regarding the number of mitigating circumstances to be submitted, the statements clearly were not so grossly improper as to require the trial court to intervene *ex mero motu. See State v. Frye*, 341 N.C. 470, 491, 461 S.E.2d 664, 674 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d

526 (1996) (comments during jury selection constituting shorthand summaries of the definitions of aggravating and mitigating circumstances which were substantially correct were not so grossly improper as to require the trial court to intervene *ex mero motu*, even if slightly slanted toward the State's perspective). We note further that the trial court properly instructed the jury regarding the aggravating and mitigating circumstances, and that the law to be applied was as stated by the court rather than by the attorneys. Under these circumstances, we are convinced that the jury was not misled and that its recommendation was not unduly influenced by the prosecutor's statements during *voir dire*. Accordingly, we reject defendant's fourth argument.

**[6]** In his fifth argument, defendant, relying on *State v. Johnson*, 341 N.C. 104, 459 S.E.2d 246 (1995), contends that the trial court committed plain error in not conducting an inquiry and in not declaring a mistrial *ex mero motu* when a panel of prospective jurors was allowed to see defendant in leg irons. In *Johnson*, this Court found no error in the trial court's denial of the defendant's motion for a mistrial where the trial court conducted *voir dire* upon the defendant's motion, determined that the jurors had seen the defendant in handcuffs and leg restraints, gave corrective instructions, and inquired as to whether the jurors would be influenced by what they had seen. Unlike in *Johnson*, defendant here made no motion for a mistrial or for curative instructions to the jury.

In *State v. Montgomery*, 291 N.C. 235, 229 S.E.2d 904 (1976), this Court reaffirmed its holding and reasoning in *State v. Tolley*, 290 N.C. 349, 226 S.E.2d 353 (1976), which recognized that as a general rule a defendant in a criminal case is entitled to appear at trial free from shackles, except in extraordinary circumstances, in order to protect the presumption of innocence. Nevertheless, this Court held that the trial court did not err by refusing to grant the defendant's motion for mistrial because the jury observed him in handcuffs while being escorted from the jail to the courtroom. In so holding, this Court noted:

> [I]t is readily apparent that [the] instant case differs factually from *Tolley*. Here defendant was never shackled or bound while in the courtroom. The only basis upon which the trial judge could have granted a new trial was that the fleeting view of the handcuffed defendant while being transported from the jail to the courtroom may have suggested to some of the jurors that defend-

ant was "an obviously bad and dangerous person whose guilt is a foregone conclusion."

*Montgomery*, 291 N.C. at 250, 229 S.E.2d at 912-13 (quoting *Tolley*, 290 N.C. at 366, 226 S.E.2d at 367). In *Montgomery*, this Court further stated:

> [S]ome of the jurors may have momentarily viewed defendant in handcuffs while he was being escorted from the separate jail building to the courthouse. It is common knowledge that bail is not obtainable in all capital cases and the officer having custody of a person charged with a serious and violent crime has the authority to handcuff him while escorting him in an open, public area. Indeed, it would seem that when the public safety and welfare is balanced against the due process rights of the individual in this case, such action was not only proper but preferable. Under the circumstances of this case, the trial judge correctly denied defendant's motion for a mistrial.

*Id.* at 252, 229 S.E.2d at 913-14.

In the present case, as in *Montgomery*, defendant was not shackled or bound while in the courtroom, but may have been seen in restraints by prospective jurors as he was brought through the lobby of the courthouse. Further, this was a sentencing proceeding; therefore, defendant's guilt had already been determined as defendant had been previously convicted of first-degree murder. The jury was aware of this. Thus, being temporarily observed in restraints did not infringe on defendant's presumption of innocence, since there was no such presumption. Accordingly, the trial court did not err in not conducting an inquiry and granting a mistrial.

[7] In defendant's sixth argument, defendant first contends that the trial court erred by denying defendant's "Motion to Question Potential Jurors Concerning their Beliefs as to Parole Eligibility." We recently addressed the issue of the denial of a similar motion in *State v. Payne*, 337 N.C. 505, 448 S.E.2d 93 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 292 (1995), and held against defendant's position. In *Payne*, we said:

> We previously have held that evidence about parole eligibility is not relevant in a capital sentencing proceeding because it does not reveal anything about defendant's character or record or about any circumstances of the offense. The United States Supreme Court's recent decision in *Simmons v. South Carolina*,

[512] U.S. [154], 129 L. Ed. 2d 133 (1994), does not affect our prior rulings on this issue. There, the Court ruled that a sentencing jury must be informed that a defendant is parole ineligible when the State argues to the jury for the death penalty based on the premise that the defendant will be dangerous in the future. The Court, however, noted that where a defendant is eligible for parole, "[s]tates reasonably may conclude that truthful information regarding the availability of commutation, pardon, and the like, should be kept from the jury in order to provide 'greater protection in [the States'] criminal justice system than the Federal Constitution requires.' " *Id.* at [168], 129 L. Ed. 2d at 145 (quoting *California v. Ramos*, 463 U.S. 992, 1014, 77 L. Ed. 2d 1171, 1189 (1983)); *see also State v. Bacon*, 337 N.C. 66, 97-98, 446 S.E.2d 542, 558-59, (1994). Here, defendant would have been eligible for parole had he been given a life sentence. We continue to adhere to our prior rulings on this issue. This assignment of error is overruled.

*Payne*, 337 N.C. at 516-17, 448 S.E.2d at 99-100 (citations omitted). We reject defendant's argument relating to the denial of his motion for reasons similar to those stated in *Payne*.

[8] Defendant further contends that the trial court erred by giving the jury a false response to its inquiry during deliberations concerning parole eligibility. In response to specific questions from the jury, the trial court informed the jury that eligibility for parole is not a proper matter for the jury to consider, and in determining whether to recommend death or life imprisonment, it "should determine the question as though life imprisonment means exactly what the statute says: imprisonment for life in the State's prison." Defendant contends that this answer is false.

We have rejected similar contentions in *State v. Skipper*, 337 N.C. 1, 43-44, 446 S.E.2d 252, 275-76 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 895 (1995), and *State v. McLaughlin*, 341 N.C. 426, 454-55, 462 S.E.2d 1, 16 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 879 (1996). Having found no compelling reason to depart from our prior holdings, we reject defendant's sixth argument.

[9] In his seventh argument, defendant seeks a new capital sentencing proceeding on the basis of the admission of inadmissible and prejudicial evidence offered by the State. The State introduced into evidence in support of the N.C.G.S. § 15A-2000(e)(3) aggravating circumstance (previous conviction of a felony involving the use or

threat of violence to a person) State's Exhibit No. 73, a copy of a 1976 California change of plea and an order indicating that defendant had pleaded guilty to one count of armed robbery with a .22-caliber pistol. State's Exhibit No. 73 also indicated that defendant had pleaded guilty to a second count of felony robbery, and that two additional armed robbery charges had been dropped. Although defendant did not object to the admission of this exhibit, he now contends that the trial court's admission of this exhibit into evidence entitles him to a new capital sentencing proceeding since the jury may have relied upon this exhibit in recommending a sentence of death. This contention is without merit.

Assuming, *arguendo*, that State's Exhibit No. 73 would not have been admissible over a proper objection, we nevertheless conclude that its admission did not impact the jury's recommendation in light of the evidence that was properly admitted and the fact that the jury was properly instructed as to the requirement for finding the existence of the N.C.G.S. § 15A-2000(e)(3) aggravating circumstance. In addition, defense counsel candidly admitted the existence of this aggravating circumstance during his argument to the jury. Accordingly, we reject this assignment of error.

In his eighth argument, defendant contends that the jury returned the death verdict under the influence of passion, prejudice, and other arbitrary factors. Defendant's argument is based on his previous assignments of error, and having rejected defendant's arguments on those assignments of error, we reject defendant's eighth argument.

### PRESERVATION ISSUES

Defendant also raises two additional arguments that he concedes have been decided contrary to his position previously by this Court: (1) the trial court erred in its instructions on nonstatutory mitigating circumstances, permitting jurors to reject submitted mitigating circumstances on the basis that they had no mitigating value; and (2) the trial court erred in using the word "may" in its instructions in sentencing Issues Three and Four, on the ground that the court's action denied the jurors discretion to find these circumstances to have mitigating value.

Defendant raises these issues for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for any possible further judicial review of this case.

We have carefully considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Accordingly, we reject these arguments.

## PROPORTIONALITY REVIEW

[10] Having concluded that defendant's capital sentencing proceeding was free of prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain: (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. N.C.G.S. § 15A-2000(d)(2).

In the instant case, the jury found defendant guilty of first-degree murder under the theory of malice, premeditation, and deliberation as well as under the felony murder rule. The jury also convicted defendant of first-degree sexual offense. During defendant's resentencing proceeding, the trial court submitted three aggravating circumstances to the jury: that defendant had been previously convicted of a violent felony, N.C.G.S. § 15A-2000(e)(3); that the murder was committed while defendant was engaged in the commission of a sexual offense, N.C.G.S. § 15A-2000(e)(5); and that the murder was committed to disrupt or hinder the enforcement of the law, N.C.G.S. § 15A-2000(e)(7). The jury found the (e)(3) and (e)(5) aggravating circumstances to exist. Of the statutory mitigating circumstances submitted, the jury found that the murder was committed while the defendant was mentally or emotionally disturbed, N.C.G.S. § 15A-2000(f)(2), and that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the law was impaired, N.C.G.S. § 15A-2000(f)(6), but rejected the catchall mitigating circumstance, N.C.G.S. § 15A-2000(e)(9). Of the twenty-six nonstatutory mitigating circumstances submitted, the jury found twenty-four. After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the two aggravating circumstances found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

STATE v. THOMAS

[344 N.C. 639 (1996)]

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate.

In support of his argument that his death sentence is disproportionate, defendant submits that the instant case is comparable to two first-degree murder cases involving sexual offenses in which juries did not return death sentences: *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980), and *State v. Prevette*, 317 N.C. 148, 345 S.E.2d 159 (1986). We find these cases distinguishable.

In *Powell*, the sole basis for the conviction was felony murder. By contrast, in the instant case, defendant was convicted of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990); *see also State v. Kandies*, 342 N.C. 419, 455, 467 S.E.2d 67, 87 (1996). Accordingly, the instant case is unlike *Powell*.

In *Prevette*, the defendant was convicted of first-degree murder and first-degree kidnapping. The charge of first-degree sexual offense was dismissed by the State prior to trial. That case is also distinguishable from the instant case. First, in the instant case, defendant was convicted of first-degree sexual offense. Further, the sexual offense in this case was more brutal and dehumanizing than may have occurred in *Prevette*. *See Prevette*, 317 N.C. at 152, 345 S.E.2d at 162 (autopsy revealed small superficial lacerations along the wall of the vagina which might have been caused by a male penis or by a pair of scissors). Finally, the jury in the instant case found the (e)(5) aggra-

**STATE v. THOMAS**

[344 N.C. 639 (1996)]

vating circumstance, that the murder was committed during a sexual offense, and that circumstance was not found in *Prevette*.

It is also proper to compare this case to those where the death sentence was found not disproportionate. *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. "[W]e have never found a death sentence disproportionate in a case involving a victim of first-degree murder who also was sexually assaulted." *Kandies*, 342 N.C. at 455, 467 S.E.2d at 86. In addition, we have noted that "juries tend to return death sentences in murder cases involving a sexual assault on the victim." *State v. Campbell*, 340 N.C. 612, 644, 460 S.E.2d 144, 161 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 871 (1996).

In *State v. Payne*, 337 N.C. 505, 448 S.E.2d 93, this Court upheld a death sentence when the only aggravating circumstance found by the jury was the (e)(5) circumstance that the murder was committed during commission of a sexual offense. In that case, the location of the murder, which was the victim's home, was an important consideration. *Id.* at 537, 448 S.E.2d at 112; *see also Brown*, 320 N.C. at 231, 358 S.E.2d at 34 (a murder in the home "shocks the conscience, not only because a life was senselessly taken, but because it was taken by the surreptitious invasion of an especially private place, one in which a person has a right to feel secure"). Further, the Court found it significant in *Payne* that the defendant was found guilty of murder based on both the felony murder rule and on malice, premeditation, and deliberation.

In the instant case, the jury found the (e)(3) aggravating circumstance (previously convicted of a violent felony) as well as the (e)(5) aggravator. This Court has noted that the (e)(3) aggravating circumstance "reflect[s] upon the defendant's character as a recidivist." *Brown*, 320 N.C. at 224, 358 S.E.2d at 30.

There are four statutory aggravating circumstances which, standing alone, this Court has held sufficient to sustain death sentences. *Bacon*, 337 N.C. at 110 n.8, 446 S.E.2d at 566 n.8. Both the (e)(3) and (e)(5) aggravators are among them. *Id.* There was sufficient evidence introduced at trial from which the jury could find that defendant had been previously convicted of a felony involving the use or threat of violence and that the murder was committed during the commission of a sexual offense.

The aggravating circumstances found in this case have been present in other cases where this Court has found the sentence of

death proportionate. *See, e.g., State v. Buckner*, 342 N.C. 198, 464 S.E.2d 414 (1995) (affirming a death sentence based on both the (e)(3) and the (e)(5) aggravators); *Zuniga*, 320 N.C. 233, 357 S.E.2d 898 (affirming a death sentence based on the (e)(5) factor alone); *Brown*, 320 N.C. 179, 358 S.E.2d 1 (affirming a death sentence based on the (e)(3) factor alone).

In this case, the victim was found dead in her home, with bite marks on her breasts, her inner thighs bruised, her head covered by a pillow, and a telephone inserted inside her vagina. There were signs of both manual and ligature strangulation which was determined to be the cause of death. Further, defendant had been convicted previously of armed robbery, a violent felony.

After comparing this case to other roughly similar cases as to the crime and the defendant, we conclude that this case has the characteristics of first-degree murders for which we have previously upheld the death penalty as proportionate. Accordingly, we cannot conclude that defendant's death sentence is excessive or disproportionate. We hold that defendant received a capital sentencing proceeding free of prejudicial error, and that the sentence of death is not disproportionate.

NO ERROR.