**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-7**

JAMES EDWARD THOMAS,

                                        Petitioner - Appellant,

        versus

MARVIN L. POLK, Warden, Central Prison,
Raleigh, North Carolina,

                                        Respondent - Appellee.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   Malcolm J. Howard,
District Judge.  (CA-99-503-5-H-HC)

Argued: March 16, 2006          Decided: April 17, 2006

Before WILKINS, Chief Judge, and NIEMEYER and DUNCAN, Circuit
Judges.

Affirmed by unpublished opinion.  Chief Judge Wilkins wrote the
opinion, in which Judge Niemeyer and Judge Duncan joined.

**ARGUED:** Ann Elizabeth Groninger, PATTERSON HARKAVY, L.L.P.,
Raleigh, North Carolina, for Appellant. Jonathan Porter Babb, Sr.,
Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF
JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Robert
E. Zaytoun, ZAYTOUN & MILLER, P.L.L.C., Raleigh, North Carolina,
for Appellant.  Roy Cooper, Attorney General of North Carolina,
Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

WILKINS, Chief Judge:

James Edward Thomas appeals an order of the district court denying his petition for habeas corpus relief from his conviction and death sentence for the murder of Teresa West.[1] See 28 U.S.C.A. § 2254 (West 1994 & Supp. 2005). We affirm the denial of relief.


I.

The facts may be briefly stated. Thomas moved into the Sir Walter Tourist Home in Raleigh, North Carolina, in early 1986. While living there, he befriended Teresa West, the manager of the home. In June of that year, Thomas moved to Cary, North Carolina with his fiancee, Sandy Jordan. On the evening of June 13, Thomas borrowed a friend's car and drove to the tourist home to visit West, who had told Thomas she had some heroin (Thomas was a heroin addict). After unsuccessfully seeking to acquire cocaine to inject along with the heroin, Thomas proceeded to West's room, where he injected the heroin. He also dissolved and injected some pills West gave him.

According to Thomas' trial testimony, West, who was only partially clothed, confronted him and demanded sex. Thomas refused on the grounds of fidelity to Jordan and inability due to the heroin. West attempted to start an argument, at which point Thomas

---

[1]Thomas named Marvin Polk, the Warden of Central Prison in Raleigh, North Carolina, as Respondent. For ease of reference, we refer to Respondent as "the State" throughout this opinion.

claims he passed out. When he awoke, West was dead; Thomas fled the apartment. West's body was found with a telephone receiver inserted into her vagina. The forensic expert who performed the autopsy testified that West was strangled manually and with a pair of pantyhose and that the insertion of the telephone receiver probably occurred post-mortem.

Thomas was charged with, and convicted of, first-degree murder and first-degree sexual offense. See N.C. Gen. Stat. §§ 14-17, 14-27.4 (2005). The murder conviction rested on both premeditation and the felony murder rule, with the underlying felony being the first-degree sexual offense. The jury sentenced Thomas to death. On direct appeal, the North Carolina Supreme Court affirmed Thomas' convictions but vacated his sentence and remanded for resentencing on the basis of McKoy v. North Carolina, 494 U.S. 433, 435 (1990) (holding that North Carolina jury instructions improperly required juror unanimity as to mitigating factors). See State v. Thomas, 407 S.E.2d 141, 146-55 (N.C. 1991). Thomas was again sentenced to death, and this sentence was affirmed. See State v. Thomas, 477 S.E.2d 450 (N.C. 1996), cert. denied, 522 U.S. 824 (1997).

Two attorneys were subsequently appointed to represent Thomas on post-conviction review. On February 4, 1998, these attorneys filed a two-page motion for appropriate relief (MAR) raising a claim relating to Thomas' first sentencing hearing. The MAR judge denied the motion on June 9 without requiring a response from the

3

State and later denied a motion to vacate the denial. Thereafter, the Office of the Appellate Defender moved to have appointed counsel replaced on the basis that "they have failed to competently and conscientiously represent their client." J.A. 602. This motion was granted, and new counsel were appointed. New counsel moved to vacate the order dismissing the MAR and to allow the filing of a new MAR; this motion was denied. In August, new counsel moved to compel discovery pursuant to N.C. Gen. Stat. § 15A-1415(f) (2005).[2] The court denied the motion on the basis that Thomas' MAR had already been denied when discovery under § 1415(f) was requested.

The North Carolina Supreme Court granted certiorari review "for the limited purpose of remanding ... for reconsideration ... in light of this Court's opinion in State v. Bates, 348 N.C. 29, 497 S.E.2d 276 (1998)." State v. Thomas, 526 S.E.2d 475 (N.C. 1998). The MAR court reaffirmed its previous order on the basis that Bates, which involved only the scope of § 1415(f) and the proper respondent to a discovery motion under the statute, was inapplicable to the procedural question of whether a request for

---

[2]Section 1415(f) provides, in pertinent part, that "[t]he State, to the extent allowed by law, shall make available to the capital defendant's counsel the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed or the prosecution of the defendant."

4

discovery could be granted after an MAR had been filed and denied.[3] The North Carolina Supreme Court thereafter denied certiorari. <u>See</u> <u>State v. Thomas</u>, 539 S.E.2d 7 (N.C. 1999).

Thomas then filed this federal habeas petition. As is relevant here, Thomas claimed that the jury charge with respect to the felony murder count was unconstitutional and that trial counsel were constitutionally ineffective. The district court denied the former claim on the merits and found that the latter was procedurally defaulted. The district court then granted a certificate of appealability as to the felony murder claim, and we expanded the certificate to include the ineffective assistance claim.

## II.

We first consider Thomas' challenge to his conviction. Prior to trial, Thomas requested an instruction on the felony murder charge that would have required the jury to find that West was alive at the time of the sexual offense. Thomas argued that because North Carolina law defined a first-degree sexual offense as a sexual act committed "against the will of the other person," N.C. Gen. Stat. § 14-27.4(a)(2), the offense could only be committed

---

[3]Thomas asserts that <u>Bates</u> "held that a defendant who, like petitioner, was denied discovery because his MAR was already denied when he requested it, was in fact entitled to discovery." Br. of Appellant at 5. We discern no such holding in <u>Bates</u>, however.

while the victim was alive and thus had a "will" that could be overborne. Otherwise, Thomas argued, the offense was the misdemeanor act of desecrating a corpse, which could not support a felony murder conviction. The trial court refused this instruction, and instead instructed the jury that "it makes no difference whether the intent to commit ... a sexual offense was formulated before the use of force or after it, so long as the elements of ... sexual offense occur under circumstances and in a time frame that you find to be a single transaction." J.A. 324.

On direct appeal, Thomas argued that the evidence was insufficient to support his felony murder conviction because the evidence established only that the insertion of the telephone receiver into West's vagina occurred after her death. The North Carolina Supreme Court rejected this claim, concluding that "[b]ecause the sexual act was committed during a continuous transaction that began when the victim was alive, we conclude the evidence was sufficient to support defendant's conviction for first-degree sexual offense." Thomas, 407 S.E.2d at 149.

Before this court, Thomas argues that the instruction given by the trial court was unconstitutional because it allowed the jury to convict him even if the sexual offense was a mere afterthought to the murder, thereby violating the constitutional principle that "only true involvement in a murder while perpetrating a felony shall put a defendant in jeopardy of his own life." J.A. 826; see

6

<u>Enmund v. Florida</u>, 458 U.S. 782, 798 (1982) (holding that the imposition of the death penalty on a felony murder theory violates the Eighth Amendment when the defendant was a minor participant in the underlying felony and "did not kill or intend to kill").[4]  We may not grant relief on this claim unless the decision of the North Carolina Supreme Court affirming Thomas' felony murder conviction "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C.A. § 2254(d)(1).  A state court decision is "contrary to" Supreme Court precedent in either of two situations: (1) when "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).  A state court decision rests on an "unreasonable application" of clearly established Supreme Court precedent when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u> at 413.  The Supreme Court has

---

[4]It is not clear that Thomas raised this particular claim on direct appeal.  However, because the State does not assert that the claim is defaulted, we will consider it on the merits.  <u>See</u> <u>Royal v. Taylor</u>, 188 F.3d 239, 247 (4th Cir. 1999).

made clear that the phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Id. at 412.

Although Thomas cites numerous decisions of the Supreme Court concerning the necessary level of culpability for the imposition of the death penalty, none of these cases held, or even intimated, that the Constitution prohibits imposition of the death penalty when, although part of the same transaction, the underlying felony occurs after the death of the victim. We therefore affirm the rejection of this claim by the district court.


                                III.

We now turn to Thomas' claim concerning the ineffective assistance of trial counsel. In his second MAR, Thomas sought to raise a claim that trial counsel were constitutionally defective for failing to present substantial amounts of information about Thomas' horrific childhood. Cf. Wiggins v. Smith, 539 U.S. 510, 524-29, 534-38 (2003) (holding that counsel were constitutionally deficient, and petitioner was prejudiced, by counsel's failure to investigate his background). The MAR court concluded that this claim was defaulted because it was not raised in Thomas' first MAR. See N.C. Gen. Stat. 15A-1419(a)(1) (2005).

8

Absent cause and prejudice or a miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). A procedural rule is adequate if it is regularly or consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), to cases that are procedurally analogous, see McCarver v. Lee, 221 F.3d 583, 589 (4th Cir. 2000). Adequacy does not require "an undeviating adherence to [the] rule admitting of no exception" so long as the rule is consistently applied "in the vast majority of cases." Mueller v. Angelone, 181 F.3d 557, 584 (4th Cir. 1999) (internal quotation marks omitted). Furthermore, we necessarily look only to the period prior to the time the defendant violated the state procedural rule; decisions applying or declining to apply a state rule after that time are irrelevant in determining whether the rule was consistently applied at the critical time. See Meadows v. Legursky, 904 F.2d 903, 907 & n.3 (4th Cir. 1990) (en banc).

Section 1419(a)(1) has repeatedly been held by this court to be an adequate and independent procedural rule. See Bacon v. Lee, 225 F.3d 470, 476 (4th Cir. 2000) (citing cases).[5] Indeed, we have

---

[5]We ultimately concluded in Bacon that there was "some doubt" as to whether the North Carolina Supreme Court consistently applied § 1419(a)(1) when the MAR court had granted a motion to reconsider its denial of a previous MAR. Bacon, 225 F.3d at 477. Because Thomas' MAR was never reopened, Bacon is not controlling.

9

held that § 1419(a)(1) is an adequate state rule in a case presented in precisely the same procedural posture as Thomas', namely, when a claim raised in a second MAR was ruled defaulted on the basis that it was not raised in a previous MAR even though the petitioner asserted that the failure to raise the claim earlier stemmed from counsel's ineffectiveness. See Boyd v. French, 147 F.3d 319, 331-32 & n.8 (4th Cir. 1998).

Thomas acknowledges this, but argues that the North Carolina courts do not consistently apply § 1419(a)(1) to situations when counsel is ineffective in a first MAR. As support for this proposition, Thomas cites three cases: State v. Tucker, 545 S.E.2d 742 (N.C. 2000), in which the North Carolina Supreme Court allowed the filing of a second MAR after counsel admitted that he "deliberately sabotaged" his representation of the petitioner; State v. Pinch, Nos. 80-CRS-16429, 16430, slip op. at 4 (N.C. Super. Ct. Mar. 30, 2005), in which a second MAR appears to have been allowed on the basis of decisions of the United States Supreme Court, see N.C. Gen. Stat. § 15A-1419(c)(2) (2005); and State v. Walker, Nos. 92-CRS-20762, 70920, slip op. at 4-5 (N.C. Super. Ct. Nov. 30, 2004), in which the trial court stayed the petitioner's execution on the basis that the petitioner had established a likelihood of success on certain claims and that failure to

_____

We conclude that the limited remand ordered by the North Carolina Supreme Court is not sufficient to bring this case within the ambit of Bacon.

10

consider his claims would result in a fundamental miscarriage of justice, see N.C. Gen. Stat. § 15A-1419(b)(2) (2005).

Not only were all of these cases decided after Thomas' second MAR was defaulted, they also are not procedurally analogous to Thomas' situation. In Tucker, counsel admitted that he deliberately sabotaged his client's case on post-conviction review. And, both Pinch and Walker involved claims of a statutory exception to the general bar of § 1419(a)(1), something that Thomas does not claim here. Additionally, Pinch is currently the subject of a petition for certiorari with the North Carolina Supreme Court.

Thomas raises two additional arguments to support his assertion that his ineffective assistance claim should not be defaulted under § 1419(a)(1). Although Thomas failed to raise these arguments in the district court, we will nevertheless address them briefly. First, Thomas maintains that a procedural bar should not be applied when it would be grossly unfair to do so. See, e.g., Lee v. Kemna, 534 U.S. 362, 376, 382-85 (2002) ("There are ... exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."). There is nothing inherently unfair, however, about requiring that all available grounds for relief be raised in a petitioner's first MAR. See McCleskey v. Zant, 499 U.S. 467, 493 (1991) ("[T]he doctrines of procedural default and abuse of the writ are both designed to

11

lessen the injury to a State that results through reexamination of a state conviction on a ground that the State did not have the opportunity to address at a prior, appropriate time; and both doctrines seek to vindicate the State's interest in the finality of its criminal judgments.").

If there is any unfairness in the application of § 1419(a)(1) to Thomas' second MAR, it is that the attorneys who were first appointed to represent him on post-conviction review were deficient. Thomas raises this as his second contention, claiming that the ineffectiveness of his first MAR counsel should be "imputed to the State," thereby providing cause for the default. Coleman v. Thompson, 501 U.S. 722, 754 (1991) (internal quotation marks omitted). Attorney ineffectiveness constitutes cause, however, only when the Sixth Amendment guarantees the right to counsel, which it does not do in post-conviction proceedings. See id. at 752-53; Mackall v. Angelone, 131 F.3d 442, 449 (4th Cir. 1997) (en banc).


IV.

For the reasons set forth above, we affirm the denial of habeas relief by the district court.


AFFIRMED