STATE OF NORTH CAROLINA v. ERIC JOHNSON

No. 266A94

(Filed 28 July 1995)

**1. Constitutional Law § 284 (NCI4th)— motion to dismiss privately retained counsel—denial—right to counsel not abridged**

There was no merit to defendant's contention that the trial court's denial of his motion to dismiss an attorney privately retained by his family violated his constitutional right to counsel, including the right to waive legal representation and appear *pro se*, since defendant never requested that he be allowed to represent himself at trial; although he requested the removal of the privately retained attorney from his case, he did not express any dissatisfaction with his court-appointed attorney and at no time requested that he also be removed from defendant's case; this distinction negated the inference that defendant was electing to represent himself; and the trial court's inquiry into defendant's reasons for wishing to dismiss the privately retained attorney and as to whether there were any irreconcilable differences between them or impediments to her continued representation of defendant was sufficient.

**Am Jur 2d, Criminal Law §§ 764-766.**

**Accused's right to represent himself in state criminal proceeding—modern cases. 98 ALR3d 13.**

2. **Evidence and Witnesses § 1070 (NCI4th)— flight—sufficiency of evidence to support instruction**

The evidence was sufficient in this homicide prosecution to support the trial court's instruction on flight where the evidence showed that defendant shot his estranged wife in the plain view of her mother; he immediately got into his sister's car and drove away from the crime scene without rendering any assistance to the victim; he did not return to his residence immediately after the shooting; he drove the car to a trailer park, parked it between two trailers, and abandoned it with the keys inside and gasoline in the tank; police issued an all points bulletin for defendant but failed to locate him until approximately twenty-one hours after the crime was committed; at the time of his arrest defendant had been drinking alcohol; and prior to his arrest defendant's sister encouraged him to turn himself in to the police, but defendant made no response and kept drinking beer.

**Am Jur 2d, Trial §§ 1333-1335.**

3. **Criminal Law § 535 (NCI4th)— defendant seen in shackles by jury—curative instructions—defendant not prejudiced**

The trial court did not err in denying defendant's motion for a mistrial after the jurors observed him being brought through the courtroom in handcuffs and leg restraints where, prior to the opening of court, defendant was briefly seen in restraints inside the courtroom while being escorted into a room where his restraints were removed; defendant was in no way restrained or shackled during the trial itself; the trial court specifically informed the jury that defendant's conduct had presented no problems which would require any form of restraint in the courtroom; the trial court instructed the jury at least four times not to hold the fact that defendant had been restrained against him in any way; after the corrective instructions the jurors were asked if they would be influenced by what they had seen; and none of the jurors indicated that they had any problems being fair or following the trial court's instructions.

**Am Jur 2nd, Trial § 1720.**

**Propriety and prejudicial effect of gagging, shackling, or otherwise physically restraining accused during course of state criminal trial. 90 ALR3d 17.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Stephens (Donald W.), J., at the 3 January 1994 Criminal Session of Superior Court, Vance County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 10 May 1995.

*Michael F. Easley, Attorney General, by Marilyn R. Mudge, Assistant Attorney General, for the State.*

*J. Henry Banks for defendant-appellant.*

PARKER, Justice.

Defendant was tried capitally on an indictment charging him with the first-degree murder of Jacqueline Terry Johnson (victim). The jury returned a verdict finding defendant guilty of first-degree murder. During a capital sentencing proceeding, the jury failed to find the sole aggravating circumstance submitted for its consideration, and the trial court imposed a mandatory sentence of life imprisonment. For the reasons discussed herein, we conclude that defendant's trial was free of prejudicial error and uphold his conviction and sentence.

On 3 July 1992 the victim was twenty-two years old and was living with her mother, Mary Lou Terry, and the victim's three-year-old daughter at Foster's Trailer Park in Vance County, North Carolina. She was separated from defendant, whom she had married in October 1990.

On 3 July 1992 defendant was living in a utility building behind the home of his sister, Lonnie Johnson, at 518 Hickory Street in Henderson, North Carolina. The victim visited defendant at his sister's home occasionally, and defendant was often seen at Foster's Trailer Park.

Mary Lou Terry testified that she observed defendant driving a blue car through the neighborhood several times during the afternoon of 3 July 1992. At approximately 3:00 p.m. defendant went to Mrs. Terry's door and asked for the victim. The victim was not home, and defendant left.

STATE v. JOHNSON

[341 N.C. 104 (1995)]

The victim arrived home at approximately 4:30 p.m. on 3 July 1992. She left home for the evening with her sister at approximately 6:00 p.m. Mrs. Terry remained at home all evening, babysitting her three-year-old granddaughter. At approximately 1:00 a.m. on 4 July 1992, Mrs. Terry was watching television when she noticed the lights of a car driving up to the trailer. Mrs. Terry thought that her daughter was arriving home and went to open the door for her.

Mrs. Terry's front yard was illuminated by a light on her front porch. When Mrs. Terry opened the door, she saw defendant coming across her yard shooting at the victim, who had gotten out of her car and had walked around the back to the passenger side. The victim fell facedown into the mud in the front yard of her mother's trailer. Mrs. Terry ran outside and tried to get between the victim and defendant, but defendant pushed her down on the ground.

When Mrs. Terry got up off the ground, she did not see defendant. She went over to her daughter and turned her over. She held her daughter in her arms and cleaned the mud off her face. After a few moments the victim said, "Momma, I've been shot." At that time Mrs. Terry saw defendant walk around from behind her and point a pistol at the victim's head. She looked up at defendant and said, "Eric, . . . you done shot her once. Don't shoot her no more. . . . Please don't shoot her no more." Defendant ignored Mrs. Terry and shot the victim in the head. Defendant then turned from the victim, walked to his sister's blue car, and drove away from the scene of the murder.

An autopsy of the victim's body was conducted by Dr. Deborah L. Radisch, Associate Chief Medical Examiner for the State of North Carolina. Dr. Radisch testified that the autopsy revealed entry wounds to the right eyelid and right chest. One bullet entered the victim's skull through the right eye, causing multiple fractures of the skull and tears and bruising of the victim's brain tissue. This projectile was recovered from the victim's skull after the brain was removed during the autopsy. A second bullet entered the victim's chest on her right side near her armpit. This bullet pierced the victim's right lung and tore the victim's spinal cord in half before lodging in her spine. This second bullet was also recovered during the autopsy.

Dr. Radisch testified that the victim's death resulted from these two gunshot wounds. She was unable to determine which wound was sustained first or the time interval between the shots. Dr. Radisch classified both wounds as "distant range wounds" which were most likely inflicted from a distance of two and a half to three feet.

Curtis Brame of the Vance County Sheriff's Department testified that he arrived at the murder scene at approximately 1:00 a.m. on 4 July 1992. He observed the victim's body lying in the front yard of Mrs. Terry's trailer. Mrs. Terry was extremely upset when he arrived. Mrs. Terry informed Sergeant Brame that defendant was the person who shot her daughter, and the police put out an all-points bulletin for defendant's arrest. This all-points bulletin included a description of both defendant and the car he was driving the night of the murder.

Lieutenant John Shockley arrived at the murder scene at approximately 1:30 a.m. on 4 July 1992. He took photographs of the victim's body and directed a search of the murder scene for weapons and bullets. Lieutenant Shockley arrested defendant at approximately 10:00 p.m. on 4 July 1992 near his residence at 518 Hickory Street in Henderson. Defendant, who was intoxicated at the time of his arrest, did not resist the police and agreed to talk with them.

Mrs. Terry's distress over the death of her daughter prevented Lieutenant Shockley from interviewing her in detail for several weeks after the murder. Lieutenant Shockley interviewed Mrs. Terry on 29 July 1992, at which time she made a statement implicating defendant in the murder and describing the shooting.

Defendant's evidence tended to show that the wound to the victim's head was not inflicted from close range. Dr. Page Hudson, the former Chief Medical Examiner for the State of North Carolina, testified that the lack of residue on the victim's face suggested the wound to her head was a "distant range wound" occurring at a distance of at least three to five feet.

Lonnie Johnson, defendant's sister, testified on defendant's behalf. Ms. Johnson testified that defendant was acting normal when she loaned him her car at approximately 4:30 p.m. on 3 July 1992. She did not see him again that day. She next saw defendant near his home on the morning of 4 July 1992, just prior to his arrest. Ms. Johnson testified that defendant was "not himself" at that time. Defendant had been drinking and was crying. Ms. Johnson led defendant to a nearby house and called other members of their family. Defendant appeared to be in a daze and did not respond when Ms. Johnson suggested that he go to the magistrate's office.

On cross-examination by the State, Ms. Johnson admitted that on the night of the murder, she received a telephone call from an unidentified person informing her that defendant had left her car with the

keys inside it parked between two trailers in Brookhaven Trailer Park. This telephone call caused Ms. Johnson to feel something was wrong at Foster's Trailer Park. A friend drove her by Mrs. Terry's trailer in Foster's Trailer Park, where she observed a body covered by a sheet lying in the yard. Ms. Johnson left Foster's Trailer Park and retrieved her car from Brookhaven Trailer Park. She stated that she did not know that the victim was Jacqueline Terry Johnson until she was informed of the victim's identity by Lieutenant Shockley.

Gerald Lemay also testified on behalf of defendant. Mr. Lemay lived three trailers away from the victim in Foster's Trailer Park. He testified that he returned home around midnight on the evening of 3 July or the morning of 4 July 1992 and found defendant parked in his yard. Mr. Lemay and defendant sat in the car defendant borrowed from his sister, talking and drinking beer for approximately thirty minutes. Mr. Lemay testified that although defendant had been drinking, he was acting normal. During the time the two men sat in the car, defendant did not mention the victim or threaten her in any way. Mr. Lemay left defendant in the car and went to buy beer with some other friends. When Mr. Lemay returned forty-five minutes later, he saw Mrs. Terry standing in her yard and the victim lying on the ground. Mr. Lemay testified that defendant was no longer at his trailer when he returned.

Dr. Thomas Brown, who was accepted by the court as an expert in "addiction psychiatry," testified on behalf of the defense. Dr. Brown testified that defendant had been addicted to alcohol since 1989. Dr. Brown was of the opinion that as a result of his alcohol addiction, at the time of the murder defendant was suffering from chronic and acute impairment of the ability to exercise judgment and to control his impulses. Dr. Brown testified that at the time of the murder, defendant's ability to plan was substantially impaired and defendant lacked the capacity to form the specific intent to kill.

[1] In his first assignment of error, defendant contends that the trial court erred by failing to dismiss his privately retained counsel upon defendant's stated request in open court. At trial defendant was represented by Desiree W. Crawford, an attorney privately retained by his family, and by J. Henry Banks, a court-appointed attorney. On 3 January 1994, just prior to jury selection, defendant moved the court to fire Ms. Crawford. Defendant claimed that Ms. Crawford had promised to work out a deal with the prosecutor whereby defendant would receive a "term sentence" of a number of years in prison as

punishment for this crime in return for a guilty plea. Defendant indicated a desire to dismiss Ms. Crawford because she had failed to obtain the plea and now he was facing the possibility of receiving the death penalty. Defendant told the trial court that he did not see any reason to continue to pay Ms. Crawford for her services. Defendant did not express any other dissatisfaction with Ms. Crawford's services.

The trial court questioned Ms. Crawford about defendant's complaints. Ms. Crawford informed the court that she had attempted on two occasions to work out a plea bargain arrangement for defendant whereby he would plead guilty to first-degree murder and receive a life sentence. She stated that on both occasions defendant had initially accepted the terms of the plea bargain but later refused to accept the plea when brought into court. Both Ms. Crawford and Mr. Banks testified that there were no irreconcilable differences between defendant and Ms. Crawford nor were there any impediments to the continuation of Ms. Crawford's representation of defendant. The trial court made findings that defendant had set forth no legal or factual basis for Ms. Crawford's dismissal and denied defendant's motion.

Defendant argues that this ruling forced him to retain unwanted counsel. Defendant contends that this violated his constitutional right to counsel, which includes the right to waive legal representation and appear *pro se* on his own behalf. Defendant contends that the trial court's questioning about his desire to dismiss Ms. Crawford was insufficient because the trial court did not make any findings as to whether his desire to dismiss her was made with the full understanding of his right to counsel.

Assuming *arguendo* that the trial court's denial of defendant's motion to dismiss his privately retained attorney was error, we conclude that the ruling did not violate defendant's constitutional right to counsel. A criminal defendant has a constitutional right to the assistance of counsel in his defense, which implicitly includes the right to refuse the assistance of counsel and conduct his own defense. *Faretta v. California*, 422 U.S. 806, 45 L. Ed. 2d 562 (1975); *State v. Hutchins*, 303 N.C. 321, 337, 279 S.E.2d 788, 798-99 (1981). If a defendant desires to proceed *pro se*, he or she may not be forced to accept representation by unwanted counsel. *State v. Gerald*, 304 N.C. 511, 516, 284 S.E.2d 312, 315 (1981); *State v. Thacker*, 301 N.C. 348, 354, 271 S.E.2d 252, 256 (1980).

N.C.G.S. § 15A-1242 sets forth the prerequisites necessary before a defendant may waive his constitutional right to counsel and represent himself at trial as follows:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

N.C.G.S. § 15A-1242 (1988).

However, in *State v. Hutchins*, 303 N.C. at 339, 279 S.E.2d at 800, this Court stated that "[g]iven the fundamental nature of the right to counsel, we ought not to indulge in the presumption that it has been waived by anything less than an express indication of such an intention." In *State v. Gerald* this Court concluded that

> although the better practice when a defendant indicates problems with his counsel is for the court to inquire whether defendant wishes to conduct his own defense, it is not reversible error for the court not to do so when there has been no intimation that defendant desired to represent himself.

304 N.C. at 518, 284 S.E.2d at 317. Only if a defendant clearly expresses his desire to have counsel removed and to proceed *pro se* is the trial court obligated to make further inquiry pursuant to N.C.G.S. § 15A-1242 to determine if defendant understands the consequences of his decision and voluntarily and intelligently wishes to waive his right to the representation of counsel. *Id.* at 519, 284 S.E.2d at 317. In the absence of such an expression by defendant of a desire to proceed *pro se*, when faced with a claim of conflict between defendant and his attorney, the trial court must determine only that the defendant's present counsel is able to render competent assistance and that the nature of the conflict will not render such assistance ineffective. *State v. Thacker*, 301 N.C. at 353, 271 S.E.2d at 255.

STATE v. JOHNSON

[341 N.C. 104 (1995)]

In the instant case defendant never requested that he be allowed to represent himself at trial. Although he requested the removal of Ms. Crawford from his case, he did not express any dissatisfaction with Mr. Banks, his court-appointed attorney, and at no time requested that he also be removed from defendant's case. This distinction negates the inference that defendant was electing to represent himself in this matter. The trial court's inquiry into defendant's reasons for wishing to dismiss Ms. Crawford and as to whether there were any irreconcilable differences between them or impediments to her continued representation of defendant was sufficient.

As we have concluded that the assumed error did not rise to the level of constitutional error, the defendant has the burden of showing that there is a reasonable possibility that had the error not occurred, the jury would have reached a different result. N.C.G.S. § 15A-1443(a) (1988). We conclude that defendant has failed to meet this burden, and this assignment of error is overruled.

[2] Next, defendant argues that there was insufficient evidence to support the trial court's jury instruction on flight as evidence of guilt. Defendant argues that there was no evidence presented at trial to establish what efforts were made to locate defendant the night of the murder. He claims that the evidence merely shows that he left the scene of the crime and was apprehended the next morning near his home. Relying on *State v. Thompson*, 328 N.C. 477, 402 S.E.2d 386 (1991), defendant argues that the mere evidence that he left the scene of the crime was not enough to support an instruction on flight absent some evidence that he took steps to avoid apprehension. We conclude that there was sufficient evidence to support the trial court's jury instruction on flight.

In accordance with the North Carolina Pattern Instructions, the trial court instructed the jury on flight as follows:

Now, ladies and gentlemen, the State contends that the defendant left the scene of the Terry residence where Jacqueline Terry Johnson died, and fled. I instruct you that evidence of flight may be considered by you, together with all other facts and circumstances in this case, in determining whether the combined circumstances amount to an admission or show a consciousness of guilt on the part of the defendant. However, proof of this circumstances [sic] is not sufficient in itself to establish a defendant's guilt. Further, this circumstance has no bearing whatsoever on the question of whether or not the defendant acted with premed-

itation and deliberation; therefore, it must not be considered by you as evidence of premeditation or of deliberation.

"[A] trial court may not instruct a jury on defendant's flight unless 'there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged.'" *State v. Levan,* 326 N.C. 155, 164-65, 388 S.E.2d 429, 435 (1990) (quoting *State v. Irick,* 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)). "Mere evidence that defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that defendant took steps to avoid apprehension." *State v. Thompson,* 328 N.C. at 490, 402 S.E.2d at 392.

The evidence in the instant case showed that defendant shot his estranged wife in the plain view of her mother. He immediately got into his sister's car and drove away from the crime scene without rendering any assistance to the victim or seeking to obtain any medical aid for her. He did not return to his residence immediately after the shooting. He drove his sister's car to Brookhaven Trailer Park, where he parked it between two trailers. He abandoned the car with the keys inside and with gasoline in the tank. Some unknown person later called defendant's sister and told her where she could find her car. From this call defendant's sister thought something had happened at Foster's Trailer Park.

When the police arrived at the scene of the murder, they secured the scene and searched the surrounding area for evidence. Mrs. Terry gave the police a description of defendant, and the police issued an all-points bulletin describing defendant and the car he was driving. The police failed to locate defendant near the area of the crime scene during the hours following the murder.

Defendant was apprehended the evening of 4 July near his home. At the time of his arrest, defendant had been drinking alcohol. Prior to his arrest, his sister encouraged defendant to turn himself in to the police, but defendant made no response and kept drinking beer.

This evidence clearly permits an inference that defendant not only left the crime scene but took some action to avoid apprehension. The evidence was sufficient to support the trial court's instruction on flight, and this assignment of error is overruled.

[3] In his final assignment of error, defendant contends the trial court erred in denying his motion for a mistrial after jurors observed him being brought through the courtroom in handcuffs and leg restraints.

The trial court conducted an extensive *voir dire* on defendant's motion. The evidence produced during the *voir dire* revealed that defendant was routinely placed in handcuffs and leg restraints when transported to the court from the jail. Several minutes before court was scheduled to begin on Monday, 10 January 1994, defendant was escorted by police officers through the courtroom and into a room in the courthouse where his handcuffs and leg restraints were removed. All the jurors were present inside the courtroom when defendant was escorted through the courtroom, and defendant was visible for a distance of approximately fifty feet. Upon questioning by the trial court, each juror indicated that he or she had seen defendant in handcuffs and leg restraints.

Defendant contends that in conjunction with the trial court's instruction on flight, the denial of his motion for a mistrial deprived him of his right to a fair trial. We reject defendant's argument for the following reasons.

N.C.G.S. § 15A-1061 provides as follows:

> Upon motion of a defendant or with his concurrence the judge may declare a mistrial at any time during the trial. The judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case.

N.C.G.S. § 15A-1061 (1988). "The decision whether to grant a motion for mistrial rests within the sound discretion of the trial judge and will not ordinarily be disturbed on appeal absent a showing of abuse of that discretion." *State v. Boyd*, 321 N.C. 574, 579, 364 S.E.2d 118, 120 (1988). A trial judge does not abuse his discretion by polling the jurors and is entitled to consider their answers in weighing the evidence and in ruling on the motion for a mistrial. *State v. Boykin*, 78 N.C. App. 572, 574, 337 S.E.2d 678, 680 (1985).

.Applying the foregoing principles, we conclude that the trial court did not abuse its discretion in denying defendant's motion for a mistrial in this case. The trial court gave corrective instructions to the jurors about this incident and questioned them in order to determine if they were still able to give defendant a fair trial.

The trial court explained to the jury that no one accused of first-degree murder is entitled to bond and that all such defendants are subject to the same rules governing transportation to and from the

courtroom. The trial court reminded the jury that defendant had denied guilt, was presumed innocent, and was under no duty to prove his innocence. The trial court further told the jury that the defendant's conduct had not presented any problems that would require any form of restraint in the courtroom.

The trial court instructed the jury at least four times not to hold the fact that defendant had been restrained against him in any way. Jurors are presumed to follow the instructions given to them by the court. *State v. Rouse*, 339 N.C. 59, 92, 451 S.E.2d 543, 561 (1994), *reconsideration denied*, 339 N.C. 619, 453 S.E.2d 188 (1995), *cert. denied*, —— U.S. ——, —— L. Ed. 2d —— 64 U.S.L.W. 3241 (1995); *State v. Jennings*, 333 N.C. 579, 618, 430 S.E.2d 188, 208, *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 602 (1993).

After the trial court gave corrective instructions to the jurors, they were then asked if they would be influenced by what they had seen such that they could no longer be fair or follow the trial court's instructions regarding defendant's rights and the State's obligations in this case. None of the jurors indicated that they had any problems being fair or following the trial court's instructions.

In *State v. Montgomery*, 291 N.C. 235, 229 S.E.2d 904 (1976), this Court determined the trial court correctly denied a defendant's motion for a mistrial when he was seen by several jurors in handcuffs while he was being transported from the jail to the courthouse. In that case the Court stated:

It is common knowledge that bail is not obtainable in all capital cases and the officer having custody of a person charged with a serious and violent crime has the authority to handcuff him while escorting him in an open, public area.

*Id.* at 252, 229 S.E.2d at 914.

Although the defendant in *Montgomery* was observed in restraints by several jurors outside the courtroom, the same reasoning is applicable to the present case. In this case, prior to the opening of court on 10 January 1994, defendant was briefly seen in restraints inside the courtroom while being escorted into a room where his restraints were removed. Defendant was in no way restrained or shackled during the trial itself, and the trial court specifically informed the jury that defendant's conduct had presented no problems which would require any form of restraint in the courtroom.

On the record before us, we conclude that the trial court properly determined that there was no "conduct inside or outside of the courtroom resulting in substantial and irreparable prejudice" to defendant pursuant to N.C.G.S. § 15A-1061. The trial court did not abuse its discretion by denying defendant's motion for a mistrial, and this assignment of error is overruled.

Defendant expressly abandoned his other five assignments of error pursuant to Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure.

For all the foregoing reasons, we conclude that defendant received a fair trial free of prejudicial error.

NO ERROR.