STATE OF NORTH CAROLINA v. JANIE LATONYA PERKINS, DEFENDANT

No. COA06-320

(Filed 2 January 2007)

**1. False Pretense— indictment—false representation of subsisting fact**

An indictment charging defendant with obtaining property by false pretenses was not fatally defective even though defendant contends the indictment failed to allege a false representation of a subsisting fact, because: (1) by alleging that defendant

used credit and check cards that were issued in the name of another person, that were wrongfully obtained, and that she had no permission to use, the indictment sufficiently apprised defendant that she was accused of falsely representing herself as an authorized user of the cards; and (2) the indictment adequately described the actions taken by defendant including her use of cards belonging to another person, wrongfully obtained, and without authorization, that led to the acquisition of merchandise.

## 2. False Pretense— sufficiency of evidence—false representation—intent to deceive

The trial court did not err by denying defendant's motion to dismiss the charge of obtaining property by false pretenses even though defendant contends the State failed to present sufficient evidence of false representation and of defendant's intent to deceive the store, because: (1) a false pretense may be established by conduct alone and does not necessarily depend upon the utterance of false or misleading words; and (2) a jury could reasonably infer from the evidence that defendant, through her actions, falsely represented to the store her authority to use the victim's credit cards and that her intent was to deceive the store.

## 3. Burglary and Unlawful Breaking or Entering— unlawful entry—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of breaking or entering even though defendant contends the State failed to prove an unlawful entry when she entered a law office that was open to members of the public, because: (1) even if an entry is initially legal, subsequent conduct of the entrant may render the consent to enter void ab initio; and (2) a jury could find that based on an attorney's prohibiting defendant from coming to his office, the first entry was nonconsensual, and even if that directive is disregarded, the jury could also reasonably find that defendant falsely told the attorney that she was in the office to see a secretary in order to obtain access to the private areas of the law offices.

## 4. Larceny— acting in concert—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of felonious larceny of credit cards because there was substantial evidence that defendant and her coparticipant acted together in pursuit of a common plan or purpose and

that defendant was therefore guilty of larceny even though the breaking or entering to steal the credit cards was actually committed by the coparticipant.

**5. Burglary and Unlawful Breaking or Entering;— verdicts— misdemeanor breaking or entering—felonious larceny— not inconsistent**

The jury's initial verdict of guilty of misdemeanor breaking or entering was not legally inconsistent with the jury's verdict of guilty of felony larceny of credit cards, and the trial court should have accepted the initial verdict, where evidence tended to show that defendant and a male companion made unlawful entries into nonpublic areas of a law firm in the morning; the male companion made another entry into the law firm in the afternoon and a lawyer's credit cards were stolen in the afternoon; and the jury could reasonably have found that the State failed to prove defendant's intent to commit larceny when she entered the firm in the morning and that she was guilty of misdemeanor breaking or entering based on her morning entries.

**6. Larceny— verdicts—felony larceny—not guilty of felony breaking or entering**

When a jury is instructed that a defendant may be guilty of felony larceny because she acted in concert with another individual following a breaking or entering, a conviction for felony larceny is legitimate even though defendant may be found not guilty of felony breaking or entering.

**7. Criminal Law— motion for mistrial—defendant's own misconduct**

The trial court did not abuse its discretion in an obtaining property by false pretenses, felony larceny, and felony breaking or entering case by denying defendant's motion for a mistrial after a juror overheard defendant's remark to her attorney that she was leaving her own trial, and the trial court questioned the juror about the incident in front of the entire jury, because: (1) while it would have been the better practice to interview the juror individually, a review of the record indicated that the trial court nonetheless acted within its discretion when the situation was of defendant's own making since she chose to flee the trial after announcing her intentions in the public stairwell; (2) arguments for a mistrial do not carry great weight when the conduct relied upon arise from a defendant's own misconduct; and (3) the jurors

STATE v. PERKINS

[181 N.C. App. 209 (2007)]

each indicated, upon polling by the trial court, that they could remain fair and impartial.

Appeal by defendant from judgments entered 3 November 2005 by Judge Ronald E. Spivey in Forsyth County Superior Court. Heard in the Court of Appeals 12 October 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Sueanna P. Sumpter, for the State.*

*Glenn Gerding for defendant-appellant.*

GEER, Judge.

Defendant Janie Latonya Perkins appeals from her convictions of obtaining property by false pretenses, felony larceny, and felony breaking or entering. On appeal, defendant argues primarily that the trial court erred in rejecting the jury's initial verdict of misdemeanor breaking or entering, felony larceny, and obtaining property by false pretenses and ordering the jury to redeliberate. Because the initial verdicts of misdemeanor breaking or entering and felony larceny were not necessarily legally inconsistent, we reverse and remand for entry of judgment on the jury's original verdicts. We find defendant's remaining arguments unpersuasive and, therefore, hold that defendant otherwise received a trial free of prejudicial error.

### Facts and Procedural History

The State presented evidence at trial that tended to show the following facts. At around 8:30 a.m. on the morning of 18 August 2004, Michael Grace, an attorney with the law firm of Grace, Holton, Tisdale, and Clifton, encountered defendant inside the entryway of the firm's Winston-Salem office. Mr. Grace was familiar with defendant from a time when he worked at a different office. While at that office, Mr. Grace had instructed defendant to stay away from his office. On the morning of 18 August 2004, Mr. Grace reminded defendant that he did not want her in his office. When, however, defendant mentioned that she was at the firm to see a secretary, Mr. Grace assumed defendant was being represented by another member of the firm and directed defendant to one of the firm's office managers, Marilyn Moore.

Later that morning at about 10:30 a.m., Ms. Moore noticed a black male wearing a sports jersey coming down a hallway from the rear of the firm's office. As Ms. Moore stepped into the hallway, she saw

STATE v. PERKINS

[181 N.C. App. 209 (2007)]

defendant in the hallway, beyond the public reception area, as well. Ms. Moore asked defendant if she needed assistance, and defendant responded by indicating that she was with the man in the jersey. The man told Ms. Moore that he wanted to see attorney Mireille Clough, but Ms. Moore informed him that Ms. Clough was presently out of the office. Shortly thereafter, both defendant and her male acquaintance left the premises. No testimony presented at trial placed defendant at the firm after this point.

After having an early lunch on 18 August 2004, Ms. Clough returned to the firm's office. Since she was scheduled to appear in court at 1:00 p.m., she dropped off a bag of personal belongings inside her office and then departed for court. Inside the bag was a day planner that contained several of Ms. Clough's credit cards.

Around 1:30 p.m., Don Tisdale, another attorney with the firm, was returning to the office from lunch when he spotted a black male in a sports jersey coming out of Ms. Clough's office. When Ms. Clough returned to the office after court, at approximately 3:30 p.m., she discovered the day planner missing. She contacted her credit card companies and learned her cards had been used to make multiple purchases that afternoon at a Food Lion store on Waughtown Street.

Ms. Clough then contacted the police. She met with police officers at the Food Lion and reviewed the store's surveillance videotape. The videotape showed a woman, identified at trial as defendant, and a black male in a jersey at the checkout counter making purchases. Four separate transactions, in amounts ranging from $79.15 to $178.57, were accomplished in less than fifteen minutes using Ms. Clough's cards. Store receipts revealed that defendant had signed Ms. Clough's name to complete the purchases.

As two police officers, Detectives Gregory Dorn and Michael Poe, were driving to interview a witness in connection with the purchases at Food Lion, one of them noticed defendant coming out of a house at 1424 Waughtown Street. They stopped and approached defendant, explaining to her that they had seen her on a videotape using a credit card to make purchases at the Food Lion. Defendant at first denied having been at the Food Lion, but then admitted being there, telling the officers that she had used a credit card belonging to her aunt. Defendant then changed her story again, telling the police that "a guy named Steve" let her use the card at Food Lion.

After defendant was placed under arrest, she led police to a nearby wooded area where the day planner and customer receipts

from Food Lion were recovered. At 1424 Waughtown Street, a man named Steven Brooks was also found and arrested. The police identified Brooks from the videotape as the same man who accompanied defendant at Food Lion. Ms. Clough's credit cards were later found in a flower pot at the house on Waughtown Street.

Defendant was subsequently indicted on charges of obtaining property by false pretenses, felony breaking or entering, felony larceny, and having obtained the status of habitual felon. At trial, the judge instructed the jury as to both misdemeanor and felony breaking or entering and larceny. The jury returned verdicts finding defendant guilty of misdemeanor breaking or entering, felony larceny, and obtaining property by false pretenses. After reviewing these verdicts, the judge sent the jury out and told the parties that the verdicts as to misdemeanor breaking or entering and felony larceny were "legally inconsistent."

The judge then summoned the jurors back to the courtroom, explained to them "that the verdicts are not legally consistent," and directed the jury to resume deliberations. After deliberating for a second time, the jury returned a new verdict sheet finding defendant guilty of felony breaking or entering and, again, of felony larceny. Defendant was subsequently found guilty of being a habitual felon. The trial court imposed two consecutive sentences of 110 to 141 months imprisonment. Defendant gave timely notice of appeal.

## Discussion

### I. *Indictment for Obtaining Property by False Pretenses*

[1] Defendant argues that her indictment on the charge of obtaining property by false pretenses was fatally defective, depriving the trial court of jurisdiction. "[W]here an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time, even if it was not contested in the trial court." *State v. Wallace*, 351 N.C. 481, 503, 528 S.E.2d 326, 341, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498, 121 S. Ct. 581 (2000).

A bill of indictment must contain:

[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the

defendant or defendants of the conduct which is the subject of the accusation.

N.C. Gen. Stat. § 15A-924(a)(5) (2005). The crime of obtaining property by false pretenses is defined as "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Cronin*, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980). Defendant contends that the indictment failed to allege a false representation of a subsisting fact.

The indictment at issue alleged that defendant:

unlawfully, willfully and feloniously did knowingly and designedly, with the intent to cheat and defraud, attempted to obtain BEER AND CIGARETTES from FOOD LION by means of a false pretense which was calculated to deceive. The false pretense consisted of the following: THIS PROPERTY WAS OBTAINED BY MEANS OF USING THE CREDIT CARD AND CKECK [sic] CARD OF MIRIELLE CLOUGH WHEN IN FACT THE DEFENDANT WRONGFULLY OBTAINED THE CARDS AND WAS NEVER GIVEN PERMISSION TO USE THEM.

By alleging that defendant used a card that was issued in the name of another person, that was wrongfully obtained, and that she had no permission to use, the indictment sufficiently apprised defendant that she was accused of falsely representing herself as an authorized user of the cards. A "false pretense need not come through spoken words, but instead may be by act or conduct." *State v. Parker*, 354 N.C. 268, 284, 553 S.E.2d 885, 897 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162, 122 S. Ct. 2332 (2002). Here, the indictment adequately described the actions taken by defendant—i.e., her use of a card belonging to another person, wrongfully obtained, and without authorization—that led to the acquisition of the merchandise. We accordingly hold that the allegations in the indictment support the false representation element of the offense.

As defendant was put on notice of the charge against her, we do not find the indictment to be defective for a lack of detail or specificity. *See State v. Snyder*, 343 N.C. 61, 65, 468 S.E.2d 221, 224 (1996) (an indictment " 'is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subse-

quent prosecution for the same offense' " (quoting *State v. Coker*, 312 N.C. 432, 434-35, 323 S.E.2d 343, 346 (1984))). This assignment of error is overruled.

## II. *Motion to Dismiss*

Defendant next contends that the trial court erred in denying her motion to dismiss. In ruling on a criminal defendant's motion to dismiss, the trial court must determine whether the State has presented substantial evidence (1) of each essential element of the offense and (2) of the defendant's being the perpetrator. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255, *cert. denied*, 537 U.S. 1006, 154 L. Ed. 2d 404, 123 S. Ct. 488 (2002). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (quoting *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984)). When considering the issue of substantial evidence, the trial court must view all of the evidence presented "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818, 115 S. Ct. 2565 (1995).

**[2]** With respect to the charge of obtaining property by false pretenses, defendant argues that the State failed to present sufficient evidence of a false representation and of defendant's intent to deceive the Food Lion store. In particular, defendant contends that no evidence at trial showed any "verbal" misrepresentations by defendant. As our Supreme Court recognized in *Parker*, however, a false pretense may be established by conduct alone and does not necessarily depend upon the utterance of false or misleading words. 354 N.C. at 284, 553 S.E.2d at 897.

At trial, the State introduced videotape evidence showing defendant at Food Lion making purchases. In addition, the store receipts from those transactions showed that defendant accomplished the purchases with cards belonging to Ms. Clough and, further, that defendant had signed the receipts with the misspelled signature of Ms. Clough. From this evidence, a jury could reasonably infer that defendant, through her actions, falsely represented to Food Lion her authority to use Ms. Clough's credit cards and that her intent was to deceive Food Lion. *See id.* at 285, 553 S.E.2d at 897-98 (holding "defendant's actions constituted a false pretense" where defendant drove to bank teller window and, while holding victim hostage in pas-

senger seat, presented victim's driver's license and withdrawal slip to teller in order to obtain cash; Court concluded that "[d]efendant falsely represented to the bank that the withdrawal was legitimate and had the continuing support of the victim"). Consequently, the trial court properly denied her motion to dismiss the charge of obtaining property by false pretenses.

**[3]** With respect to the breaking or entering charge, N.C. Gen. Stat. § 14-54(a) (2005) provides that it is a felony to "break[] or enter[] any building with intent to commit any felony or larceny therein . . . ." It is, however, a misdemeanor when one simply "wrongfully breaks or enters any building" without the specified intent. N.C. Gen. Stat. § 14-54(b). *See State v. Boone*, 297 N.C. 652, 658, 256 S.E.2d 683, 686 (1979) ("[T]he only distinction between [subsections (a) and (b) is] the lack of felonious intent in the case of the misdemeanor."). Our Supreme Court has further described breaking or entering:

> In order to convict under [N.C. Gen. Stat. § 14-54] the state must show that defendant did break or enter a building unlawfully. Where defendant enters a building with the consent of the owner or anyone empowered to give effective consent to enter, such entry cannot be the basis for a conviction of breaking or entering. Conversely, a wrongful entry, *i.e.* without consent, will be punishable under this section.

*State v. Locklear*, 320 N.C. 754, 758, 360 S.E.2d 682, 684 (1987) (internal citations omitted).

Defendant argues the evidence was insufficient to show that her entry into the law firm was unauthorized or wrongful, given that she entered the firm during regular business hours and the firm was open to the public. This Court already addressed this argument when considering the appeal of Steven Brooks. *State v. Brooks*, 178 N.C. App. 211, 631 S.E.2d 54 (2006). Like defendant in this case, Brooks argued that the State had failed to prove an unlawful entry because he entered a law office that was open to members of the public. In rejecting this argument, we explained that even if an entry is initially legal, "subsequent conduct of the entrant may render the consent to enter void *ab initio*." *Id.* at 214, 631 S.E.2d at 57. Applying this principle to Brooks, we wrote:

> In the instant case, the evidence tended to show that defendant entered a law office which was open to members of the public seeking legal assistance. The firm had a reception area where

members of the public were generally welcome and also areas beyond this reception area which were not open to the public. When defendant entered the reception area of the firm, he did so with implied consent from the firm. However, defendant took action which rendered this consent void *ab initio* when he went into areas of the firm that were not open to the public so that he could commit a theft, and when he misinformed a member of the firm as to the reason for his presence in these areas. Therefore, defendant illegally entered the firm.

*Id.* at 215, 631 S.E.2d at 57.

Our analysis in *Brooks* applies with equal force here. Defendant was spotted inside the law firm at two separate times on the morning of 18 August 2004. A jury could find, based on Mr. Grace's prohibiting defendant from coming to his office, that the first entry was nonconsensual. Even if that directive is disregarded, however, a jury could also reasonably find that defendant falsely told Mr. Grace that she was in the office to see a secretary in order to obtain access to the private areas of the law offices.

Further, when defendant was spotted the second time in the law offices, she was no longer in the public reception area, but in a back hallway of the nonpublic space reserved for firm employees. Defendant explained that she was merely accompanying the man in the jersey also seen walking in the nonpublic area of the office, an explanation inconsistent with her earlier statement to Mr. Grace that she needed to see a secretary at the firm. As in *Brooks*, this evidence showed that defendant ventured into the nonpublic space of the office and gave a false explanation for her presence. In accord with our decision in *Brooks*, we hold that such evidence was sufficient to permit a jury to find that defendant committed an unlawful breaking or entering.

Since defendant's own entries into the law offices were sufficient to defeat her motion to dismiss the breaking or entering charge, we need not address her argument that the State failed to present substantial evidence that defendant acted in concert with Brooks to enter Ms. Clough's personal office without consent. Further, we also need not address defendant's contention that there was insufficient evidence to show an intent to commit larceny because of our holding, discussed below, that the guilty verdict on misdemeanor breaking or entering must be reinstated.

**[4]** Turning finally to the larceny charge, "[t]he essential elements of larceny are that defendant (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to permanently deprive the owner of the property." *State v. Coats*, 74 N.C. App. 110, 112, 327 S.E.2d 298, 300, *cert. denied*, 314 N.C. 118, 332 S.E.2d 492 (1985). "The crime of larceny is a felony, without regard to the value of the property in question, if the larceny is committed pursuant to a breaking or entering in violation of section 14-54 of the General Statutes." *Brooks*, 178 N.C. App. at 215, 631 S.E.2d at 57.

Here, the State relied upon the theory that defendant acted in concert with Brooks with respect to the larceny charge. " 'Under the doctrine of acting in concert, if two or more persons act together in pursuit of a common plan or purpose, each of them, if actually or constructively present, is guilty of any crime committed by any of the others in pursuit of the common plan.' " *State v. McCullers*, 341 N.C. 19, 29-30, 460 S.E.2d 163, 169 (1995) (quoting *State v. Abraham,* 338 N.C. 315, 328-29, 451 S.E.2d 131, 137 (1994)).

Based on the evidence offered at trial, we believe that a jury could reasonably determine that defendant acted in concert with Steven Brooks to commit larceny. In the morning, defendant and Brooks were both found in the private section of the law office without permission, conduct that the jury could view as preparations for the larceny. Later, a man matching Brooks' description was seen coming out of Ms. Clough's office, where her day planner had been left. Very shortly thereafter, defendant, accompanied by Brooks, was using Ms. Clough's credit cards at the Food Lion. Defendant ultimately admitted that she had been given the cards by "Steve." Defendant also led police to a wooded area where the stolen day planner was recovered, and the missing cards were found at the same house where defendant and Brooks were both found and arrested. This is substantial evidence that defendant and Brooks acted together in pursuit of a common plan or purpose and that defendant is, therefore, guilty of larceny, even though the breaking or entering to steal the credit cards was actually committed by Brooks. *See State v. Dow*, 70 N.C. App. 82, 86, 318 S.E.2d 883, 886 (1984) (holding that "jury could reasonably find that defendant committed the offense[] of larceny . . . by reason of aiding and abetting or acting in concert" where evidence showed that two accomplices entered store while defendant remained outside in car with motor running; accomplices exited store with stolen property; and all three men were later appre-

hended in same vehicle along with stolen items). The trial court, therefore, properly denied defendant's motion to dismiss.

III. *Validity and Consistency of the Verdicts*

[5] In one assignment of error, defendant argues that the trial court should have accepted the initial guilty verdict for misdemeanor breaking or entering and erred by ordering the jury to reinitiate deliberations. In a related assignment of error, defendant argues that the jury's verdict on misdemeanor breaking or entering in turn precluded defendant's conviction of felony larceny and instead required entry of judgment on misdemeanor larceny. We agree that the trial court erred in ordering the jury to redeliberate. We disagree, however, with defendant's contention that the initial verdicts were legally incompatible and required that judgment be entered on misdemeanor larceny.

" 'When and only when, an incomplete, imperfect, insensible, or repugnant verdict, or a verdict which is not responsive to the issues or indictment is returned, the court may decline to accept it and direct the jury to retire, reconsider the matter, and bring in a proper verdict.' " *State v. Sumner*, 269 N.C. 555, 557, 153 S.E.2d 111, 112 (1967) (quoting *State v. Perry*, 225 N.C. 174, 176, 33 S.E.2d 869, 870 (1945)). The Supreme Court in *Sumner* went on to explain:

> While the general rule is that a verdict is not complete until it is accepted by the court, nevertheless the rule seems to be that if a proper verdict is returned, one that is permissible under the charge and complete in itself . . . the court should have accepted it and directed its entry into the records as the verdict of the jury.

*Id.*, 153 S.E.2d at 112-13 (internal citations omitted). The question before this Court, therefore, is whether the initial verdicts as to misdemeanor breaking or entering and felony larceny were permissible under the charge and complete in themselves.

In this case, the State offered evidence of three separate entries into the law firm. Defendant was involved in the first two entries in the morning, during a time frame when Ms. Clough's day planner was not on the premises and, therefore, could not have been stolen. Defendant was not seen at the firm the rest of that day. The third entry, later in the afternoon, after Ms. Clough had left her day planner in her office, was accomplished by a man matching Brooks' description. As we concluded above, in connection with the motion to dis-

miss, a jury could reasonably find that defendant had committed an unauthorized entry into the firm during the morning. In addition, however, the jury could also have reasonably decided that the State failed to prove defendant's intent to commit a larceny when she entered the firm that morning. For that reason, the jury could—as it did—appropriately find defendant guilty of misdemeanor breaking or entering based on her morning entries.

[6] Contrary to the trial court's and defendant's reasoning, a guilty verdict on misdemeanor breaking or entering did not, given the evidence in this case, necessarily preclude the jury from convicting defendant of felony larceny. When a jury is instructed that a defendant may be guilty of felony larceny because she acted in concert with another individual following a breaking or entering, a conviction for felony larceny is legitimate even though the defendant may be found not guilty of felony breaking or entering. *See State v. Pearcy*, 50 N.C. App. 210, 211, 272 S.E.2d 610, 611 (1980) (in considering "whether a defendant who is tried for acting in concert with others to commit felonious larceny, after a felonious breaking or entering, may be convicted of felonious larceny if the jury does not reach a verdict as to the felonious breaking or entering[,]" this Court held the jury could find defendant did not act in concert with others to break or enter, but did act in concert to commit larceny), *disc. review denied*, 302 N.C. 400, 279 S.E.2d 355 (1981). *See also State v. Curry*, 288 N.C. 312, 317-19, 218 S.E.2d 374, 377-78 (1975) (guilty verdict on felony larceny not inconsistent with acquittal of felony breaking or entering where defendant is tried on theory of aiding and abetting principal perpetrators); *State v. Marlowe*, 73 N.C. App. 443, 446, 326 S.E.2d 351, 353 (1985) (applying *Pearcy* and *Curry* to conclude that guilty verdict on felony larceny not inconsistent with acquittal of felony breaking or entering when defendant is tried on theory of acting "together" with others).

Here, the jury could have determined that defendant did not act in concert with respect to the afternoon entry into Ms. Clough's office, but that she did act in concert with respect to the larceny. In light of *Curry*, *Pearcy*, and *Marlowe*, the jury's initial verdicts on the breaking or entering and larceny counts were thus permissible under the charge and complete. The trial court erred in refusing to accept the verdicts as originally rendered.

We must, therefore, vacate defendant's conviction of felony breaking or entering, and remand for entry of judgment upon the orig-

inal verdict of misdemeanor breaking or entering and for resentencing. We find no error with respect to the felony larceny conviction.

## IV. *Motion for Mistrial*

[7] Lastly, we consider defendant's argument that the trial court should have granted her motion for a mistrial. The transcript reveals that the following events took place during the trial. While riding in the courthouse elevator, defendant whispered to a juror standing near her that she was innocent. Upon learning of this incident, the trial judge described defendant's conduct as "highly improper," discharged the juror to whom defendant had whispered, and substituted the lone alternate.

Later, defendant was discussing her case with her attorney prior to court commencing one morning, when she decided to leave the courthouse. As defense counsel later explained to the trial judge, he was trying to persuade defendant to stay in court when "she bolted" and headed into a stairwell. Defense counsel followed her, hollering: "Janie, come back up here. Come on. We've got to get on with it." A member of the jury ("Mr. Johnson") also happened to be in the stairwell during this incident.

When later questioned by the judge, in the presence of the other eleven jurors, Mr. Johnson stated that he saw defendant and her counsel in the stairwell and overheard defendant say "she wasn't coming back in here, something like that." The trial judge then asked Mr. Johnson whether he could remain fair and impartial despite having witnessed this episode in the stairwell. Mr. Johnson indicated that he could. Before resuming the trial, the judge polled the entire jury, inquiring whether each juror could remain fair and impartial. The jurors all asserted that they could remain fair and impartial.

Out of the presence of the jury, defendant argued that Mr. Johnson must be dismissed from the jury panel and moved for a mistrial. At this point, removal of Mr. Johnson would necessarily have resulted in a mistrial, as no alternate jurors were available. On appeal, defendant argues the trial court should have declared a mistrial because Mr. Johnson not only overheard defendant's remark that she was leaving her own trial, but he reported this in the presence of the whole jury.

N.C. Gen. Stat. § 15A-1061 (2005) provides that a judge, "[u]pon motion of a defendant or with his concurrence . . . may declare a mistrial at any time during the trial." The statute mandates that

"[t]he judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061.

Our Supreme Court has held that " '[a] mistrial should be granted only when there are improprieties in the trial so serious that they substantially and irreparably prejudice the defendant's case and make it impossible for the defendant to receive a fair and impartial verdict.' " *State v. Bonney*, 329 N.C. 61, 73, 405 S.E.2d 145, 152 (1991) (quoting *State v. Warren*, 327 N.C. 364, 376, 395 S.E.2d 116, 123 (1990)). The decision on a motion for mistrial is committed to the sound discretion of the trial court, and the decision will not be overturned on appeal unless an abuse of discretion is shown. *State v. Johnson*, 341 N.C. 104, 114, 459 S.E.2d 246, 252 (1995).

While it would have been the much better practice for the trial judge to interview Mr. Johnson individually, rather than in front of the entire jury, a review of the record indicates that the trial court nonetheless acted within its discretion in denying the motion for a mistrial. The situation was of defendant's own making. She chose to flee from the trial after announcing her intentions in the public stairwell. Further, the lack of an alternate to substitute for Mr. Johnson was a direct consequence of defendant's inappropriate remarks to a juror. It is well established that arguments for a mistrial do not carry great weight when the grounds relied upon arise from a defendant's own misconduct. *See State v. Marino*, 96 N.C. App. 506, 507, 386 S.E.2d 72, 73 (1989) (where defendant moved for a mistrial after his own open-court "profane outburst," Court found no error in denial of motion because "[i]f defendant was prejudiced in the eyes of the jury by his own misconduct, he cannot be heard to complain").

Since the jurors each indicated, upon polling by the trial court, that they could remain fair and impartial, we cannot conclude that the trial court abused its discretion in denying the motion for a mistrial based on circumstances caused by defendant's own misconduct. *See Johnson*, 341 N.C. at 114, 459 S.E.2d at 252 ("trial court did not abuse its discretion in denying defendant's motion for a mistrial" where the "trial court gave corrective instructions to the jurors about th[e] incident and questioned them in order to determine if they were still able to give defendant a fair trial"). We therefore overrule this assignment of error.

Vacated and remanded in part; no error in part.

Judges STEELMAN and STEPHENS concur.

Judge STEPHENS concurred prior to 31 December 2006.